UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JACQUELINE N. PADILLA,

Plaintiff,

vs.                                                              Civ. No. 04-916 WJ/DJS

WEST LAS VEGAS INDEPENDENT SCHOOL DISTRICT,
WALTER ADAMS, in his individual capacity,
AMBROSE CASTELLANO, in his individual capacity,
PATRICK MARQUEZ, in his individual capacity,
RALPH GARCIA, in his individual capacity,
MICHAEL VIGIL, in his individual capacity,
ARTURO GURULE, in his individual capacity, and
FRANK ARGUELLO, in his individual capacity,

Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO DISMISS**

THIS MATTER comes before the Court upon a Motion to Dismiss filed by Defendants Adams, Castellano, Marquez, Garcia, Vigil and Arguello on June 15, 2005 (**Doc. 34**). The motion seeks dismissal of these Defendants on the basis of qualified immunity. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and will be denied.

**Background**

Plaintiff Jacqueline Padilla ("Padilla") is the former Director of the West Las Vegas School District Head Start program ("Head Start program"). In this civil rights case, she is suing Defendants for illegal harassment and termination of employment.

According to the complaint, Padilla was hired to bring the Head Start program into compliance with federal requirements. In the winter of 2002-2003, she alleges that she

discovered and reported what she describes in the complaint as "major discrepancies in program practices" that were brought to her attention by her staff. These discrepancies included the possible misuse of public funds through fraudulent activities regarding program enrollment practices. For example, she allegedly discovered that Defendants had allowed and authorized illegal enrollment by family, friends and political supporters in the Head Start program, which was meant to serve only low-income children. Plaintiff and her staff determined that an estimated 50% of the families enrolled in Defendants' Head Start program had incomes that were too high to be in the program, and had been illegally enrolled in the program with Defendants' knowledge and assistance.

Padilla contends that immediately after she discovered and reported corruption and program deficiencies in the Head Start program, she was the target of harassment and retaliation by Defendants, resulting finally in her termination. The complaint alleges violations of Title VII based on gender discrimination; retaliation under the First Amendment for engaging in protected speech, resulting in harassment and termination; a free association claim under the First Amendment; and an Equal Protection claim under the Fourteenth Amendment.

*The Motion to Dismiss*

The named individual Defendants are school board members Walter Adams, Ambrose Castellano, Patrick Marquez, Ralph Garcia and Michael Vigil in their individual capacities; former school superintendent Arturo Gurule in his individual capacity ("Gurule"); and Head Start Parent Policy Council President Frank Arguello in his individual capacity ("Arguello").

In this motion to dismiss, Defendants challenge the claims made against the board members and Arguello, contending that the complaint does not state specific facts showing an

agreement between Gurule and the other Defendants. They further contend that these individuals did not have the authority to make decisions related to Plaintiff's employment contract, where only Gurule as school superintendent had the authority to terminate Plaintiff. Thus, they argue, all Defendants except Gurule are entitled to dismissal.

However, in their reply, Defendants withdraw their motion for dismissal as to the board members, leaving only Defendant Arguello as the subject of this motion. Defendants acknowledge that the board minutes which Plaintiff submitted as exhibits to the response "could raise a fact question" about the role of the board members in the alleged "concerted action" to violate Plaintiff's rights. Reply at 2. Plaintiffs have presented the exhibits to show that the board members expressly retained authority over employment decisions, which would have included Plaintiff's termination, and that both board Defendants and Defendant Gurule decided to end Plaintiff's contract.[1]

Defendants state that the motion is not directed to Defendant Gurule, whom Defendants apparently concede had the authority to make employment decisions affecting Plaintiff. They also correctly note that the motion is not directed to Plaintiff's Title VII claim. Mem. At 2, n.1. See Lankford v City of Hobart, 27 F.3d 477, 480 (10th Cir. 1994) (Title VII applies only to an employer). Thus, the sole issue before the Court is whether Defendant Arguello should be dismissed from Plaintiff's § 1983 claims of First Amendment and Equal Protection.

---

[1] Because Defendants have decided to defer their motion concerning the board members to the summary judgment stage, the Court need not be concerned with whether the exhibits tendered by Plaintiff in the response require converting the motion to dismiss into a motion for summary judgment. See, Hall v. Bellmon, 935 F.2d 1106, 1110-11 (10th Cir. 1991) (motion to dismiss pursuant to Rule 12(b)(6) is treated as a motion for summary judgment when premised on materials outside the pleadings).

*Legal Standard*

Defendants contend that they are entitled to qualified immunity.[2]  Once the Defendants plead qualified immunity, the burden shifts to Plaintiff to demonstrate that (1) the Defendants' conduct violated the law, and ( 2) the relevant law was clearly established when the alleged violation occurred.  Migneault v. Peck, 158 F. 3d 1131, 1139 (10th Cir. 1998), abrog. on other grds by. Kimel v. Florida Bd. of Regents, 528 U.S. 62 (2000); see Anderson v. Creighton, 483 U. S. 635, 640 ( 1987).  To show that a right is clearly established, there must be Supreme Court or Tenth Circuit law on point, or the weight of authority from other courts must support the Plaintiffs proposition. See Armijo, 159 F. 3d at 1260; Migneault, 158 F. 3d at 1139-40. Unless both prongs of the test are satisfied, qualified immunity must be granted.  See Migneault, 158 F. 3d at 1139.

In the context of a motion to dismiss, the Court's review of the qualified immunity defense is limited to the pleadings.  Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994).  When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and construe them in the light most favorable to the plaintiff. Tonkovich v. Kansas Bd. of Regents, University of Kansas, 254 F.3d 941, 943 (10th Cir. 2001). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. Mitchell v. King, 537 F.2d 385 (10th Cir. 1976).

**Discussion**

Plaintiff asserts that the Defendants participated in the harassment and retaliation which

---

[2]  Qualified immunity is available to the individual Defendants, and not to the school district defendant.  See Owen v. City of Independence, 445 U.S. 622, 638 (1980); Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000).

she suffered as a result of discovering and reporting the irregular and illegal use of the Head Start program. Recognizing that Defendants have withdrawn their motion as to the board Defendants, I look to the complaint to determine whether Plaintiff has sufficiently alleged participation in the harassment and retaliation by Arguello, or some kind of concerted effort on the part of Arguello and Gurule to deprive Plaintiff of her constitutional rights.

Allegations of conspiracy may form the basis of a § 1983 claim, which arises when two defendants conspire to deprive a plaintiff of a constitutional right under color of law. Dixon v. City of Lawton, Okl,.898 F.2d 1443, 1449, n.6 (10th Cir. 1990). However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(citing Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir.1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim")).

Apart from the need for Plaintiff to assert more than conclusory allegations, there is another issue the Court must address initially. Both parties refer to a heightened pleading standard, although neither party discusses this at any length. Defendants concede that the heightened pleading standard has been rejected by the Tenth Circuit in Currier et al v. Doran, 242 F.3d 905 (10th Cir. 2001), following the United States Supreme Court's decision in Crawford-El. v. Britton, 523 U.S. 574 (1998). Defendants nevertheless suggest that the heightened pleading may still be required in civil conspiracy actions under § 1983, citing to a recent district court opinion for support which concluded that a heightened pleading standard applies to civil conspiracy allegations under § 1983. See Medina et al. v. Town of Silver City et al., No. Civ. 03-0191 (D.N.M., March 16, 2004) (J. Brack) ("Silver City"). However, Silver City relied on Scott

5

v. Hern, 216 F.3d 897, 907 (10th Cir. 2000), which predated the Tenth Circuit's decision in Currier.  Both Crawford-El and Currier involved § 1983 claims (based on the Fourteenth Amendment in Currier, and access to the courts by a prisoner in Crawford-El), but there is no indication that the bases for the holdings in either Crawford-El or Currier would not apply to civil conspiracy claims under § 1983 as well.

The Tenth Circuit previously required a heightened pleading standard requirement for plaintiffs when qualified immunity was raised as a defense.  See Currier., 242 F.3d at 913.  The Court agrees with Plaintiff that this standard has been rejected by this Circuit in Currier ("this court's heightened pleading requirement cannot survive Crawford-El").  242 F.3d at 916.

A recent Tenth Circuit case, decided two months after Currier, appears to depart from Currier's conclusion at first blush.  In Medina v. Cram et al., 252 F.3d 1124 (10th Cir. 2001), the Tenth Circuit cautioned that Crawford-El should "be read narrowly in light of the specific issue before the Court" and noted that Crawford-El addressed "standards of proof in the context of the merits of a constitutional claim involving improper motive, rather than in the context of a qualified immunity defense." 252 F.3d at 1129.  The Court in Medina declined to apply Crawford-El's holding to qualified immunity, and instead required that the record "contain facts that rebut the presumption" of defendants' immunity from suit in order for the plaintiff to survive summary judgment.  252 F.3d at 1130.

The issue in Medina concerned what kind of evidence was needed to survive a summary judgment motion, not a motion to dismiss, as we have here.  See Currier, 242 F.3d at 912 (citing to Fed.R.Civ.P. 8).  Nevertheless, Medina's reasoning is not inconsistent with that of either Crawford-El or Currier, both of which have rejected the application of the heightened pleading

6

standard when a qualified immunity defense is raised. The threshold inquiry in a qualified immunity defense (whether plaintiff has established that defendant's actions violated a constitutional right) necessarily involves a look into the standards of proof relevant to the plaintiff's cause of action, which may involve proof of improper motive. In Crawford-El, the Supreme Court noted that there was no basis to make a change in a plaintiff's cause of action. 523 U.S. at 589 (noting that Harlow "provides no support for making any change in the nature of the plaintiff's burden of proving a constitutional violation").[3]

Medina simply acknowledges that the heightened pleading requirement (or a "clear and convincing" standard) was meant to apply to a "plaintiff's showing of improper intent (a pure issue of act), not to the *separate* qualified immunity question whether the official's alleged conduct violated clearly established law, which is an 'essentially legal question.'" 252 F.3d at 1129 (citing Crawford-El, 523 U.S. at 589) (emphasis supplied in original). Importantly, Medina does not question the rejection of a heightened pleading standard in the context of claims involving improper intent – which would include an initial showing by a plaintiff in a qualified immunity inquiry that a defendant's actions violated a constitutional right.

In this case, then, Plaintiff is not required to meet a heightened pleading standard in alleging the contours of her claim that Defendants harassed and retaliated against her after she reported corruption and program deficiencies in the Head Start program.

---

[3] In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court eliminated the subjective intent element of qualified immunity, forming what is now the current standard for the defense: that government officials are shielded from liability for civil damages when their conduct "does not violate clearly established statutory or constitutional rights of which *a reasonable person* would have known." 523 U.S. at 588 (citing Harlow, 457 U.S. at 817-18) (emphasis added).


**I.      Whether Plaintiff Has Alleged a Violation of a Constitutional Right**

In evaluating defendants' qualified immunity claims, the Court must first determine whether Plaintiff has alleged a deprivation of a constitutional right. Only if the answer to that question is "yes" does the Court consider whether that right was clearly established at the time so that reasonable officials would have understood that their conduct violated that right. McFall v. Bednar, 407 F.3d 1081, 10871 (10th Cir. 2005).

Plaintiff alleges that Arguello "acted in concert with and/or conspired with the other Defendants." Complaint, ¶ 11. She asserts that Arguello "teamed up with the few disgruntled employees and repeatedly met with Defendants Castellano, Marquez and others to plot how they were going to get rid of Plaintiff in retaliation for her advocacy of program reforms and because they did not want the program to be run by a woman. ¶ 21. The complaint states that "Defendant Arguello shared the desire with all Defendants to punish and terminate Plaintiff for her speech." ¶ 33.

Plaintiff states that following her report of illegal use of the program by above-income families who were family or friends of Defendants, instead of receiving cooperation or support to correct the illegal practice, Defendants "accelerated their activities to terminate Plaintiff." ¶ 23. She asserts that "various Defendants stated to witnesses in reference to Plaintiff that they were "going to get rid of that bitch" and other words to that effect. ¶ 24. Defendant Arguello is also implicated in the decision to terminate Plaintiff as well as the sequelae that followed: "Defendant school board members and Defendant Gurule . . . decided and informed Plaintiff in May 2003 that her contract would not be renewed. . . . ." ¶ 26.  "Defendants" (which the Court must assume includes Arguello) made false statements to the press and to members of the community after she

was terminated. ¶ 29.

The complaint states that Arguello "demanded Plaintiff's resignation on a weekly basis and worked with Defendants throughout the school year to have her removed from her position. . . ." ¶ 21.  Also, Arguello allegedly excluded Plaintiff from his "now regular discussions with Defendant school board members."  ¶ 21.  Plaintiff states that at one point, "Defendants" (which includes Arguello) did not give her information about the Head Start program at all, and the program staff were instructed not to report to Plaintiff.  ¶ 28.  The harassment and retaliation also included non-renewal of contracts for those women who were seen as Plaintiff's principal allies, and who were not associated with the political faction running the school board.  ¶ 27.

Whether or not Arguello had the statutory authority to hire or fire Plaintiff, the complaint sufficiently alleges that Arguello participated in a concerted effort to harass and retaliate against Plaintiff for her reporting of the discrepancies in the Head Start program.  Plaintiff makes more than conclusory allegations; she mentions specific actions that were taken by Arguello in common with the other Defendants.  See, Snell v. Tunnell, 920 F.2d 673, 701 (10th Cir. 1990) (civil conspiracy agreement requires simply a showing that there was "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences"); cmp., Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) (where plaintiff presented court with only conclusory allegations, including allegations that faculty members met with certain administrators during the investigation which were insufficient to show conspiracy among the defendants).  These allegations depict a conspiracy among the Defendants to deprive Plaintiff of her rights.  See Snell, 920 F.2d at 701.

Defendants point out that "the nature of conspiracies often makes it impossible to provide

9

details at the pleading stage." Brever v. Rockwell Intern. Corp., 40 F.3d 1119, 1127-28 (10th Cir. 1994). Because this is true, a plaintiff can meet the pleading requirements by either circumstantial or direct evidence. Salehpoor v. Shahinpoor, 358 F.3d 782, 789 (10th Cir. 2004) (To properly allege civil conspiracy claim, a plaintiff must allege "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants") (quoted case omitted). I find that Plaintiff has done so here.

## II.     Whether Right Was Clearly Established

Defendants focus on the first prong of the qualified immunity analysis (whether Plaintiff has adequately set forth allegations of a constitutional violation), but then abandons the inquiry, giving the Court no guidance on whether Defendants are arguing that the relevant law was not clearly established at the relevant time, or why. The Court will not craft Defendants' arguments. See Perry v. Woodward, 199 F.3d 1126, 1141 n. 13 (10th Cir.1999).

The Court notes that at the time Plaintiff was hired in June 2002, the law was clearly established that retaliation against an individual for speaking out on matters of public concern was prohibited by the First Amendment.[4] See, Dill v. City of Edmond, 155 F.3d 1193, 1202 (10th Cir.1998) (citing Connick v. Myers, 461 U.S. 138 (1983). It was also clearly established that allegations of conspiracy may form the basis of a § 1983 claim, sufficiently so that Defendants would have known that their alleged conduct violated Plaintiff's rights. Hunt v. Bennett, 17 F.3d at 1266.

---

[4] The Court herein makes no finding, however, that Plaintiff's speech was in fact constitutionally protected.

10

**Conclusion**

In sum, Plaintiff has sufficiently asserted allegations of civil conspiracy under § 1983 as to Defendant Arguello to survive Defendants' motion to dismiss. Defendants have not presented the Court with any legal basis as to why they should be entitled to qualified immunity on Plaintiff's claims against this Defendant.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss **(Doc. 34)** is hereby DENIED for reasons described above.[5]

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Court points out that the motion was filed by Defendants Adams, Castellano, Marquez, Garcia, Vigil and Arguello, but the Court's ruling applies only to Defendant Arguello, since Defendants have abandoned this motion with regard to those Defendants.